IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN GEONNOTTI, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW AMOROSO, et al., | : | |
|     Defendants. | : | No. 07-1522 |
| | : | |

**MEMORANDUM AND ORDER**

**Schiller, J.**                                                                                                          **March 13, 2008**

      Plaintiff Joan Geonnotti brings this action against Defendants Middletown Township Police Department Detectives Andrew Amoroso and Dale T. Keddie, Jr., and Tim Patterson, a private citizen, alleging, *inter alia*, violations of her civil rights in connection with her arrest and initial prosecution for attempted burglary, attempted criminal trespass, and criminal mischief.[1]  Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 under the Fourth and Fourteenth Amendments, and the state law intentional torts of assault and battery, false arrest, malicious prosecution, and outrageous conduct causing severe emotional distress.  Presently before the Court is Defendants Amoroso and Keddie's motion for summary judgment as to all of Plaintiff's claims.  For the reasons set forth below, Defendants' motion is granted in part and denied in part.

---

[1] On July 30, 2007, this Court entered default against Defendant Patterson for failure to appear, plead, or otherwise defend.  Additionally, Plaintiff originally asserted a claim against Middletown Township, but the parties have since stipulated to the dismissal of that claim.  Thus, only Plaintiff's claims against Defendants Amoroso and Keddie are before the Court at this time.

1

**I.     BACKGROUND**

The facts underlying Plaintiff's claims, while quite bizarre, are largely uncontested. The parties agree that Plaintiff, a self-described "bird lover," was concerned about the well-being of the birds at the defunct Shults Bird Farm ("Shults"), which was owned by Defendant Patterson. (Pl.'s Resp. to Defs.' Mot. for Summ. J. [hereinafter Pl.'s Resp.] Ex. B (SPCA Compl.) at 1.) On July 13, 2005, at 10:08 a.m., Plaintiff called the Bucks County Society for the Prevention of Cruelty to Animals ("SPCA") and advised SPCA Humane Officer Kathy Myron of her concerns about the birds. (*Id.*) Middletown Township Animal Control Officer Cecelia Middleton was coincidentally in Officer Myron's office at the time of Plaintiff's call and overheard the conversation. (Pl.'s Resp. Ex. C (Middletown Township Police Department 4/19/06 Report) at 2.) Following Plaintiff's call, Officer Myron called Defendant Patterson and discussed the condition of the birds. (Pl.'s Resp. Ex. B at 1.)

At approximately 2:00 p.m. on the same day, a woman entered the Shults Bird Farm and was attempting to forcibly enter the structure which housed the exotic birds when she was confronted by Defendant Patterson. (Defs.' Mot. for Summ. J. [hereinafter Defs.' Mot.] Ex. D (Incident Investigation Report) at 5.) At approximately 4:30 p.m. Defendant Patterson called 911 and reported the attempted burglary; Officer Scott Patrick proceeded to Shults and took Patterson's statement. (*Id.*) Patterson stated that when approached, the intruder said to him, "I'm a neighbor and I'm breaking in so that I can feed the birds that you are not taking care of," then left the area on foot. (*Id.*) Patterson described the woman who entered the farm as "approximately 40 years of age, with brownish-red hair in a ponytail." (*Id.*) At the time of the incident, Plaintiff had blonde hair that was too short to be worn in a ponytail. (Pl.'s Resp. Ex. L (Lt. McGinty Dep.) at 67-68.)

Defendant Detective Amoroso was assigned to investigate the case on July 14, 2005. (Defs.' Mot. Ex. D at 5.)   At some point in his investigation, Detective Amoroso spoke with Officer Middleton about a history of complaints by various individuals about the care for the birds at Shults. (*Id.*) Officer Middleton additionally relayed the conversation between Plaintiff and Officer Myron that she had overheard the previous day. (*Id.* at 6.)  Based on this information, Defendant Amoroso obtained a driver's license photograph of Plaintiff from 2001, at which time she was a brunette, and placed it in an eight person photo array.[2]   (*Id.*; Pl.'s Resp. Ex. K (Geonnotti 2001 License).) Defendants Amoroso and Keddie showed Defendant Patterson the photo array on July 14, 2005; Defendant Patterson selected Plaintiff from the array.  (Defs.' Mot. Ex. D at 6.)

On July 27, 2005, Detective Amoroso charged Plaintiff with attempted burglary, attempted criminal trespass, and criminal mischief. (*Id.* at 7).  Upon Amoroso's informing Plaintiff over the telephone that he had a warrant for her arrest, Plaintiff surrendered herself at the Middletown Township police station on August 18, 2005. (*Id.*)  Plaintiff was processed and fingerprinted at the police station; she was never handcuffed or otherwise touched by a police officer. (Defs.' Mot. Ex B (Geonnotti Dep.) at 106.)   Plaintiff was arraigned the same day and released on her own recognizance subject to a $10,000 bond; a preliminary hearing was then held on September 8, 2005, at which all charges were "held for trial."  (Defs.' Mot. Ex. D at 7.)  At the preliminary hearing, Defendant Patterson was called as a witness and, under oath, identified Plaintiff as the woman who trespassed on his property on the day in question.  (Defs.' Mot. Ex. E (Prelim. H'rg Tr.) at 13.)

---

[2] Plaintiff was issued a new driver's license on May 18, 2005—nearly two months before the incident at question here—which depicts her with blond hair.  Plaintiff does not explicitly opine as to why Defendant Amoroso used this outdated picture, though she suggests it is part of the conspiracy to violate her Constitutional rights; Defendant Amoroso provides no explanation.

Meanwhile, Plaintiff hired private investigator Martin Lyons of Monarch Investigations. (Defs.' Mot. Ex. D at 7.) Based on his own investigation, Lyons identified Cassandra Miller, who had been employed by Defendant Patterson at Shults for over a year, as the true perpetrator. (*Id.*; Pl.'s Resp. Ex. E (Miller Statement) at 1.) Thereafter, the Bucks County District Attorney withdrew the charges against Plaintiff and charged Cassandra Miller with Criminal Attempt at Criminal Trespass and Criminal Mischief. (Answer ¶ 13 ("Admitted."); Defs.' Mot. Ex. D at 10.) Miller confessed to the crimes charged in a sworn, written statement and later pled guilty to charges arising from the July 13, 2005 incident. (Joint Pretrial Stipulation ¶ 27.)

The course of events between Defendant Patterson's 911 call and Plaintiff's arrest are the subject of considerable disagreement, and form the basis for Plaintiff's claims. Plaintiff alleges that the admitted difference in the physical description provided by Patterson via the 911 call and her own appearance raises a circumstantial inference that Defendants targeted her without probable cause. She claims that Defendant Amoroso prematurely determined that Plaintiff was the perpetrator, based on her earlier telephone call to the SPCA, and then conspired with Defendants Keddie and Patterson to have Patterson select Plaintiff from the photo array. (Pl.'s Resp. at 12-13.) Defendants completely deny Plaintiff's allegation, asserting that Patterson's selection of Plaintiff from the photo array provided sufficient probable cause.

Plaintiff claims that Defendants conspired to violate, and then violated, her rights under the Fourth and Fourteenth Amendments. She further asserts state law claims of false arrest, malicious prosecution, assault and battery, and outrageous conduct causing severe emotional distress. Defendants moved for summary judgment on all counts.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). When the moving party does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thereafter, the nonmoving party demonstrates a genuine issue of material fact if sufficient evidence is provided to allow a reasonable finder of fact to find for the nonmoving party at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). Furthermore, a court may not make credibility determinations or weigh the evidence in making its determination. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S.133,150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d Cir. 2002).

## III. DISCUSSION

### A. Plaintiff has demonstrated genuine issues of material fact as to her Fourth Amendment-based false arrest and malicious prosecution claims against Detective Amoroso, and as to her false arrest claim against Detective Keddie.

Plaintiff brings false arrest and malicious prosecution claims against Defendants Amoroso and Keddie under both federal and state law. The federal claims are raised pursuant to 42 U.S.C. § 1983. To establish a claim under Section 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under

the color of state law; in this case, Plaintiff alleges violation of her Fourth Amendment rights. Plaintiff likewise asserts the parallel state claims of false arrest and malicious prosecution, over which this Court exercises supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).

       *1.     False Arrest*

"The Fourth Amendment prohibits a police officer from arresting a citizen except upon probable cause." *Rogers v. Powell*, 120 F.3d 446, 452 (3d Cir. 1997). Thus, an arrest without probable cause is a constitutional violation that may underlie a Section 1983 claim.[3] *Patzig v. O'Neil*, 577 F.2d 841, 848 (3d Cir. 1978). "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Rogers*, 120 F.3d at 453 (*quoting Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)). A determination as to probable cause is made based on the totality of the circumstances known to the officer at the time of the arrest. *Estevez v. City of Phila.*, Civ. A. No. 06-3168, 2007 WL 707358, at *4 (E.D. Pa. Mar. 2, 2007). The existence of probable cause in a Section 1983 action is typically a question of fact. *Id.* (*citing Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

---

[3] Defendants make a half-hearted argument that Plaintiff's "seizure" does not rise to the level of a Fourth Amendment arrest, as required by *Albright v. Oliver*. 510 U.S. 266 (1994). Defendants' argument is unavailing. In *Donahue v. Gavin*, the Third Circuit reiterated its position that post-indictment restrictions on liberty constitute a seizure, even when the individual is not formally arrested, but rather answers a summons. 280 F.3d 371, 380-81 (3d Cir. 2002) (*citing Gallo v. City of Phila.*, 161 F.3d 217, 222-225 (3d Cir. 1998)). In this case, rather than mailing a summons, Defendant Amoroso applied for and received an arrest warrant for Plaintiff and informed her that she must turn herself in to the police station, which she did. Upon arraignment, Plaintiff was released subject to a $10,000 "own-recognizance" bond, just as the plaintiff in *Gallo* was released. *Gallo*, 161 F.3d at 219. Taken to its logical conclusion, Defendants' argument would suggest that a cooperative criminal defendant waives her Fourth Amendment protections when she surrenders herself, which is certainly untrue.

A court may find probable cause as a matter of law, however, if the evidence, viewed in the light most favorable to Plaintiff, could not reasonably support a contrary factual finding.  *Id.*

In the instant case, the evidence viewed in the light most favorable to Plaintiff could support a jury determination that probable cause did not exist for Plaintiff's arrest.  Although Plaintiff faces an uphill battle in terms of proving her claim, a reasonable jury could conclude that Patterson's selection of her photograph, which did not match his own physical description of the perpetrator, was not fortuitous.  More importantly, a reasonable jury could conclude that this seemingly incompatible identification, along with the SPCA call, would not warrant a reaonsable officer to believe that Plaintiff had committed the offense charged.  *Rogers*, 120 F.3d at 453.  While Defendants are correct that an officer is not "required to undertake an exhaustive investigation in order to validate the probable cause that, in his mind, already existed," the question is not simply whether Defendants Amoroso and Keddie believed they had probable cause, but whether such belief was reasonable.  *Merkle v. Upper Dublin*, 211 F.3d 782, 790 (3d Cir. 2000).  Because this determination ultimately turns on the officers' credibility, summary judgment is inappropriate.  *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998).

Defendant Keddie is not shielded from liability simply because Plaintiff testified that she does not know who he is.  (Defs.' Mot. Ex. B at 95, 106.)  Defendants correctly state that an individual must be personally involved in the alleged constitutional violation, or must have actual knowledge and acquiesence in the wrongdoing.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  It is undisputed that Keddie was present alongside Amoroso when the officers presented Patterson with the photo array; it was at this moment that Plaintiff alleges the Defendants conspired

to violate her civil rights.[4]  Because Plaintiff has raised a genuine issue of material fact as to her selection from the photo array, and Defendant Keddie was present for the photo array, a jury could infer actual knowledge and acquiescence in the wrongdoing.  Thus, Defendants' motion for summary judgment as to Plaintiff's false arrest-based Section 1983 claim is denied.

Further, Defendants Keddie and Amoroso are not entitled to qualified immunity at the summary judgment stage.  "Qualified immunity protects police officers from having to defend lawsuits if their conduct did not violate clearly established statutory or constitutional law." *Estevez*, 2007 WL 707358, at *3 (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)).  At the time Plaintiff was arrested, clearly established constitutional law prohibited an arrest without probable cause.  *Id.* at 5 (*citing Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000)).  Because the existence of probable cause here turns on credibility and fact determinations, summary judgment on qualified immunity grounds is inappropriate.  *Id.*

A Pennsylvania state tort claim for false arrest lies when a plaintiff proves that the arrest was made without probable cause and for an improper purpose.  *Gilbert v. Feld*, 842 F. Supp. 803 (E.D. Pa. 1993); *Boykin v. Bloomsburg Univ. of Pennsylvania*, 893 F. Supp. 378 (M.D. Pa. 1995), *aff'd*, 91 F.3d 122 (3d Cir. 1996).  The plaintiff must prove that "the process used for the arrest is void on its face"; it is not sufficient that the charges are unjustified.  *Boykin*, 893 F. Supp. at 378; *Strickland v. Univ. of Scranton*, 700 A.2d 979, 984 (Pa. Super. 1997).  Because Plaintiff has raised a genuine

---

[4] In Plaintiff's Complaint, she asserts within her Section 1983 count, "Defendants Amoroso and Keddie, together and/or with Patterson, conspired to violate and/or did violate the constitutional rights of Plaintiff." (Compl. ¶ 75.)  Neither Plaintiff nor Defendants, though, appear to treat this allegation as a separate civil conspiracy claim.  Rather, Plaintiff seems to assert that a conspiracy was the mechanism by which Defendants violated her rights.  As Defendants do not move for summary judgment on the conspiracy, to the extent that Plaintiff asserts a conspiracy claim, summary judgment is inappropriate.

issue of material fact as to Defendants' probable cause and their potential complicity in her false identification, as described above, summary judgment is likewise inappropriate on her state false arrest claim.

### 2. *Malicious Prosecution*

Plaintiff further claims that Defendants violated her constitutional rights through malicious prosecution; again, she raised federal and state claims. Like false arrest, malicious prosecution is a Fourth Amendment-based Section 1983 claim. *Gallo*, 161 F.3d at 222. A plaintiff proves malicious prosecution under Section 1983 by establishing five elements: (1) that the defendant initiated the criminal proceeding against the plaintiff; (2) that the defendant lacked probable cause to initiate the proceeding; (3) that the criminal proceeding ended in the plaintiff's favor; (4) that the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) that as a consequence of the proceeding, the plaintiff suffered a significant deprivation of her liberty. *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 362-63 (3d Cir. 2003) (*quoting Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)).

Plaintiff survives summary judgment as to Defendant Amoroso. First, Amoroso personally secured Plaintiff's arrest warrant and admits that he initiated her prosecution. (Defs.' Mot. Ex. D at 7 ("On July 27, 2005, I charged Geonnotti with burglary, criminal trespass, and criminal mischief. The charges are all felonies, and a warrant for Geonnotti's arrest was issued by District Justice Falcone.").) Second, as described above, Plaintiff has raised a genuine issue of material fact regarding probable cause. Third, a proceeding ended by withdrawn charges supports a finding that the proceeding ended "in Plaintiff's favor" when circumstances of the dismissal indicate the plaintiff's innocence. *Donahue*, 280 F.3d at 383 (*citing* RESTATEMENT (SECOND) OF TORTS §§ 659

& 660 (1976)). Fourth, "malice may be inferred from the absence of probable cause." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). Finally, as described above, Plaintiff's arrest and post-arrest limitations constitute a sufficient Fourth Amendment deprivation of liberty.

Plaintiff's survival of summary judgment on her malicious prosecution-based Section 1983 claim necessarily requires survival of summary judgment on her parallel state claim, which depends on the same elements. "In order to establish a claim for malicious prosecution [in Pennsylvania,] a party must establish that the defendants instituted proceedings against the plaintiff: (1) without probable cause; (2) with malice; and (3) the proceedings must have terminated in favor of the plaintiff." *Bradley v. General Acc. Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001) (*citing McKibben v. Schmotzer*, 700 A.2d 484, 492 (Pa. Super. 1997)). Thus, Defendant Amoroso's motion for summary judgment on Plaintiff's state malicious prosecution claim is denied.

Plaintiff's malicious prosecution claims fail, however, as to Defendant Keddie. While Plaintiff has put forth sufficient evidence to implicate Keddie in her false arrest, she produces no evidence that he was involved in the initiation of her prosecution; neither does the police record demonstrate any such involvement. Accordingly, Defendant Keddie's motion for summary judgment will granted as to Plaintiff's malicious prosecution-based Section 1983 claim and her parallel state tort claim.

      **B.**      **Plaintiff's Fourteenth Amendment-based Section 1983 claim fails as a matter of law.**

In addition to her Fourth Amendment-based Section 1983 claims, Plaintiff brings a Fourteenth Amendment-based claim, arguing that Defendants' alleged conspiracy violated her substantive due process rights. Plaintiff is mindful that this Court determined in *Estevez* that such

a due process claim cannot exist in the absence of a criminal conviction. 2007 WL 707358, at *5-7. The Court finds no basis in Plaintiff's facts or argument to deviate from that conclusion. Plaintiff's Fourteenth Amendment-based claim thus fails as a matter of law, and summary judgment is granted to both defendants in this respect.

### C. Plaintiff's assault, battery, and outrageous conduct causing severe emotional distress claims fail as a matter of law.

#### 1. *Assault and battery*

Neither is Plaintiff able to establish the state intentional tort claims of assault and battery. Under Pennsylvania law, "assault is an intentional attempt *by force to do an injury to the person of another*, and a battery is committed whenever the *violence menaced in an assault is actually done*, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (*citing Cohen v. Lit Brothers*, 70 A.2d 419, 421 (1950)) (emphasis added). A police officer may use reasonable force to effect an arrest, and "may be held liable for assault and battery when a jury determines that the force used in making an arrest is unnecessary or excessive." *Id.* Plaintiff testified at her deposition that she "wasn't ever physically touched." (Defs.' Mot. Ex. B at 106.) She further testified that the only "offensive bodily contact" she was referring to in her complaint was being fingerprinted by Defendant Amoroso. (*Id.*) As Plaintiff alleges no attempted or actual use of any force whatsoever by Defendants, her claims fail as a matter of law, and summary judgment is granted to Defendants.

#### 2. *Outrageous conduct causing severe emotional distress*

In order to prove the Pennsylvania tort of outrageous conduct causing severe emotional distress, Plaintiff must prove that "[D]efendants, by extreme and outrageous conduct, intentionally

or recklessly caused Plaintiff severe emotional distress." *Britt v. Chestnut Hill College*, 632 A.2d 557, 561 (Pa. Super. 1993).  Actionable conduct is that "which is so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and is to be regarded as atrocious and utterly intolerable in a civilized community." *Johnson v. Caparelli,* 625 A.2d 668, 672 (Pa. Super. 1993) (*quoting* RESTATEMENT (SECOND) OF TORTS, § 46 cmt. d)).  It is not enough to allege that Defendants acted with tortious or criminal intent, intent to inflict emotional distress, or malice, absent sufficiently outrageous conduct.  *Field v. Phila. Elec. Co.*, 565 A.2d 1170, 1183-84 (Pa. Super. 1989).

Although Plaintiff proffers competent medical evidence of severe emotional distress, she fails to make any attempt at the threshold showing that Defendants' conduct was sufficiently outrageous. While Defendants' alleged conspiracy to falsely implicate Plaintiff in a crime, if proven, would violate Plaintiff's constitutional rights, it is not remotely the sort of behavior that the Pennsylvania tort contemplates.  *Compare Field*, 565 A.2d at 1184 (plaintiff stated claim where defendant intentionally vented radioactive steam on plaintiff and then made false statements to conceal the action) *with Mastromatteo v. Simock*, 866 F. Supp. 853, 859 (E.D. Pa. 1994) (plaintiff did not state claim where police officer allegedly "concoct[ed] facts to support affidavit of probable cause for plaintiff's arrest.").  Plaintiff's claim fails as a matter of law, and accordingly, summary judgment is granted to Defendants.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted to Defendants Amoroso and Keddie as to Plaintiff's Fourteenth Amendment claim and state law assault

and battery, and outrageous conduct causing severe emotional distress claims. Defendant Keddie's motion is granted as to Plaintiff's malicious prosecution claims. In all other respects, Defendants' motion is denied. An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN GEONNOTTI, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW AMOROSO et al., | : | |
| Defendants. | : | No. 07-1522 |
| | : | |

### ORDER

**AND NOW**, this **13th** day of **March**, **2008**, upon consideration of Defendants' Motion for Summary Judgment, Plaintiff's response thereto, and for the foregoing reasons, it is hereby **ORDERED** that Defendants' motion (Document No. 21) is **GRANTED in part** and **DENIED in part** as follows:

1. Defendants Amoroso and Keddie's motion is **GRANTED** as to Plaintiff's Fourteenth Amendment, assault and battery, and outrageous conduct causing severe emotional distress claims. Accordingly, Counts **One** and **Four** are **DISMISSED**, and Count **Nine** is **DISMISSED in part**, to the extent it is based on the Fourteenth Amendment.

2. Defendant Keddie's motion is **GRANTED** as to Plaintiff's malicious prosecution-based Section 1983 claim and parallel state claim. Accordingly, as to **Defendant Keddie** only, Count **Three** is **DISMISSED** and Count **Nine** is **DISMISSED in part**, to the extent it is based on malicious prosecution.

3. In all other respects, Defendants' motion is **DENIED**.

BY THE COURT:

_____
**Berle M. Schiller, J.**